UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD BOGANSKI | : NO.: 3:01CV2183 (AVC) |
| | : |
| v. | : |
| | : |
| CITY OF MERIDEN BOARD OF | : |
| EDUCATION AND JOHN CORDANI | : |

### AFFIDAVIT OF JEFFREY VILLAR

I, Jeffrey Villar, being duly sworn, depose and say that:

1. I am over the age of eighteen (18) years old.

2. I believe in the obligations of an oath.

3. I am currently the Associate Superintendent for the Meriden Board of Education, and have held that position since February 17, 2004.

4. I was the Assistant Principal at Washington Middle School from July 1, 1999 until July 1, 2001. As Assistant Principal, I was Edward Boganski's immediate supervisor from July 1, 1999 to February 2000.

5. I have personal knowledge regarding the facts contained herein.

6. I recall Mr. Boganski telling me in October 1999 that John Cordani had asked him to make up a purchase order for fuel oil. Mr. Boganski claimed that he thought doing so would be fraudulent. I advised

Mr. Boganski that he needed to work directly with Mr. Cordani to resolve the situation and obtain fuel oil for the school. I cannot recall using the term shady to describe Mr. Cordani's directive; I do know that I did not perceive it to be so.

7. I did not perceive Mr. Cordani's request as improper. The term "make up a purchase order" is used interchangeably with "issue a purchase order."

8. I do not recall having any conversations with Glen Lamontagne regarding the purchase order incident prior to this litigation.

9. I do not recall having any conversations with John Cordani regarding Mr. Boganski's complaint and/or the request for a purchase order.

10. I do recall being present for a conversation between Mr. Boganski and Mr. Cordani. I remember the conversation was tense. I do not recall Mr. Cordani bringing up the issue of the purchase order and/or Mr. Boganski's complaint.

11. I issued Mr. Boganski numerous memos throughout the time period that we were both assigned to Washington Middle School. Some of the memos were critical of his work performance; others simply advised him of tasks that needed to be completed. Mr. Boganski's complaint regarding the purchase order incident had no bearing on the memos that I issued.

12. On December 23, 1999, Mr. Boganski was suspended for his failure to obtain training for the custodians under him on the controlled air computer system, despite directives to do so, and for his lying about his possession of a Sonitrol list.

13. I had directed Mr. Boganski to get the other custodians trained on the system, but he failed to do so.

14. I had also asked Mr. Boganski if he possessed a Sonitrol list that had been reported to be in his office. Mr. Boganski denied having the list. The list, however, was later found in his office. I have no knowledge of anyone "planting" the list there.

15. I ultimately supported Mr. Boganski's removal as head custodian because it was clear to me that Mr. Boganski's work performance was not improving.

16. My two primary concerns regarding Mr. Boganski's performance pertained to his lack of judgment and his trouble managing the custodians under him.

17. No one ever put any pressure on me with respect to my dealings with Mr. Boganski. As a new administrator in the district, I did on occasion contact Mr. Cordani to see whether my expectations of a head custodian were reasonable.

18. None of my decisions regarding Mr. Boganski's employment were based on his complaint against Mr. Cordani.

Dated at Meriden, Connecticut, this 12 day of April, 2005.

Jeffrey Villar, Ph.D.

STATE OF CONNECTICUT )
                     ) ss: Meriden
COUNTY OF NEW HAVEN  )

Subscribed and sworn to before me this 12 day of April, 2005.

Ellen A. Mazza
Commissioner of the Superior Court
Notary Public
My Commission Expires: 9-30-07

ELLEN A. MAZZA
*NOTARY PUBLIC*
MY COMMISSION EXPIRES SEP. 30, 2007