UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

EDWARD BOGANSKI           :     NO.: 3:01CV2183 (AVC)

v.                        :

CITY OF MERIDEN BOARD OF  :
EDUCATION AND JOHN CORDANI :

## AFFIDAVIT OF JOHN CORDANI

I, John Cordani, being duly sworn, depose and say that:

1. I am over the age of eighteen (18) years old.

2. I believe in the obligations of an oath.

3. I am currently the Manager of Buildings and Grounds for the Meriden Public Schools, and have held that position for more than 20 years.

4. I have personal knowledge regarding the facts contained herein.

5. I recall getting a phone call from Edward Boganski regarding the need for a purchase order in October 1999. I told him that I would check into it and that I would get back to him.

6. I checked with Glen Lamontagne and called Mr. Boganski back. I told Mr. Boganski to give the vendor a purchase order number.

7. At the time, the Meriden Public Schools was using a new vendor for fuel oil. Purchase orders had not been required in the past.

8. I was out of the office the next two days. When I returned, I asked my assistant, Catherine Figura, whether Washington Middle School had gotten the fuel oil. She said no, and reported that Mr. Boganski had indicated that he did not give the vendor a purchase order number as instructed.

9. I called Mr. Boganski and asked him why he didn't give the vendor a purchase order number. Mr. Boganski said he felt uncomfortable. I hung up the phone without saying goodbye.

10. I then told Ms. Figura to call the vendor and give the company a purchase order number.

11. I was not reprimanded or disciplined as a result of this incident.

12. I did not perceive my request to be improper.

13. I do not recall having any conversations with Jeffrey Villar regarding the purchase order incident prior to this litigation.

14. I do recall one meeting with Dr. Villar in Mr. Boganski's office regarding Mr. Boganksi's improper administration of overtime amongst the custodial staff. While waiting for Mr. Boganski outside his office, Dr. Villar remarked to me that Mr. Boganski had been moody and upset about something that day, and I remarked that this visit was then going to "make his day," meaning that all he needed was to be facing another unpleasant situation. We entered his office and we discussed the overtime situation and the fact that no one had

authorized him to take overtime exclusively. No other subject was addressed at this time. Mr. Boganski became very boisterous and confrontational, and I felt that there was nothing to be accomplished with him in such a volatile mood. I then suggested that we work this out at another time and left.

15. I did not direct, or otherwise pressure, Dr. Villar to write any memos to Mr. Boganski.

16. I did not recommend or authorize the suspension to Mr. Boganski on December 23, 1999.

17. I had instructed Mr. Boganski to get the other custodians trained on the computer controlled air system, and he had failed to do so.

18. I have no knowledge of anyone "planting" the Sonitrol list in Mr. Boganksi's office.

19. In the Fall of 1999, I received a call from Steve Papotto, a plumber, who told me that he had seen the Sonitrol list on Mr. Boganski's desk. I told Mr. Papotto to copy the list and give it to Dr. Villar.

20. Weeks later, Mr. Papotto called me again and told me that the Sonitrol list was on Mr. Boganski's desk. At this time, Dr. Villar and I went to Mr. Boganski's office and found the list.

21. I did not recommend or authorize Mr. Boganski's transfer to the night custodian position at Thomas Hooker.

22. I never told the union president, Kathleen McParland, that Mr. Boganski would be fired if he didn't accept a transfer to another school. Ms. McParland did call me and said that we have to do something with Mr. Boganski. I told her that I did not have the authority to transfer anyone. I also indicated that Mr. Boganski has to do his job wherever he is.

23. I received many complaints from the Washington Middle School custodial staff regarding Mr. Boganski's lack of assistance in getting jobs done.

24. I did not, and do not, have the authority to issue a suspension to Mr. Boganski, to fire him, or to transfer him.

25. To the extent I have been involved in Mr. Boganski's employment with the Meriden Public Schools, none of my decisions have been based on Mr. Boganski's complaint about my conduct.

Dated at Meriden, Connecticut, this 27th day of April, 2005.

*/s/ John Cordani*
John Cordani

STATE OF CONNECTICUT )
                     ) ss: Meriden
COUNTY OF NEW HAVEN )

Subscribed and sworn to before me this 27th day of April, 2005.

*/s/ Lorraine B. Stabile*
Commissioner of the Superior Court
My Commission Expires: 6-30-05

LORRAINE B. STABILE
NOTARY PUBLIC
MY COMMISSION EXPIRES JUNE 30, 2005