## INTEROFFICE MEMORANDUM

**TO:** DAVID ROY
       GLEN LAMONTAGNE

**FROM:** JEFFREY VILLAR
         SHELLIE PIERCE

**SUBJECT:** MEETING

**DATE:** 12/23/99

**CC:** ED BOGANSKI, JOHN CORDANI, KATHY MCPARLAND

28

This is a summary of the meeting held on 12/23/99, in the office of principal Shellie Pierce. The following were present: Principal Shellie Pierce, Assistant Principal Jeff Villar, Union President Kathy McParland, and Head Custodian Ed Boganski.

On the following dates December 28, 29, and 30, 1999 Mr. Ed Boganski is being suspended from work without pay. The suspension is the result of Mr. Boganski's failure to follow a directive of the school administration, and making a false statement to his supervisor.

028

TO:        Ed Boganski

FROM:      Shellie Pierce
           Jeff Villar

DATE:      12-17-99

RE:        Meeting summary of 12-9-99

PRESENT:   Shellie Pierce
           Jeff Villar
           Ed Boganski
           John Cordani
           Kathy McParland

This correspondence is a follow up to the meeting on 12-9-99 in which we indicated the meeting would address concerns we had regarding your leadership as head custodian at WMS. We advised you of your right to union representation, and Kathy McParland from your unit was at the meeting.

In June of 1999, Shellie Pierce delegated the supervision of you from her to Assistant Principal Jeff Villar. Prior to that date, and since then, you have demonstrated that your abilities as a head custodian are not consistent with head custodial expectations. We outlined those concerns in this meeting. These concerns fall into three categories. One, failure to take initiative as a head custodian; two, questions regarding honesty issues; and three, poor leadership.

First, a head custodian must exert initiative to lead the department. There is much evidence that indicates you need to be told what to do, rather than initiate the effort. For example, you failed to maintain a safe environment in the boys locker room, thus a student was cut on 11-8-99 (the student required 8 stitches). On 12-8-99 a tour of the building indicated there are still stalls that are damaged and missing parts. There are numerous work orders asking for routine repairs, that had you investigated the situation yourself, many of these were routine in nature and could have been fixed by you, or in some instances, there should have been follow through on your part. Examples of these work requests were shared and they include: replace a valve in lavatory (requested 6 months ago, but no follow through on your part); change a ballast in room 3D (no follow through on your part); remove graffiti from the front of the building and library window; replace broken pencil sharpener in 6E; replace lock in boy's lav in cluster 6 and install lock release on inside of door; water fountain in cluster 9 overflowing; replace pencil sharpener in 9E; remove coat rack from hallway; replace light in boys lav; repair panel under sink in home economics

Page 1 of 3

0000065

(second request with no follow through on your part); replace lights cluster 2 hallway.

On 11-30-99 both of us had a conversation with you regarding the chiller and the external temperature change from cool to warm. You were unwilling to make the decision regarding contacting Controlled Air, thus creating an uncomfortable temperature in the school. This is another example of not taking initiative to run the department.

As the head custodian, we asked last summer that you create a check sheet to determine the needs of different areas. We asked you if this had been done, and you replied "no". Thus, when basic maintenance needs surface, you are unable to determine what needs repaired, what has been requested, and we, as the school administration, have had to take the initiative. For example, you received memos for the following: 9-7-99 a request that the kitchen floor be scrubbed daily; 9-9-99 a request that locks for cabinets in cluster one be repaired; 9-21-99 a request to fix the sink in 3D, the urinal in cluster 3, the water fountain in cluster 6 is broken, and the valve in lav next to the computer lab leaks. These items we observed on a building "walk around". We expected that the head custodian would have taken the initiative. On 9-9-99 you were told that all custodians be trained on opening and closing gym divider doors; on 9-13-99 a request that two trash cans be ordered for the outside of the school; on 9-22-99 a memo requesting that the door used by administration be repaired; 10-15-99 a request asking that all bathrooms have working paper towel dispensers and the replacement of broken/defective units; on 11-2-99 a memo requesting written work assignments and the purchase of clip boards to develop custodial work management system. These were never ordered until the front office took the initiative.

Secondly, on 11-9-99 Dr. Villar asked you if you had access to Sonitrol numbers. Twice you responded "no". We produced a copy of the letter that you received directly from Sonitrol, yet you still denied any knowledge of or access to Sonitrol numbers. Additionally, the boys locker room stalls were not removed nor replaced because you indicated that central office had "...cut the order." We had written evidence contrary to that. The stalls were removed and the replacement begun upon request, once again, from the front office at school.

Lastly, leadership requires followership. On many occasions, your staff has indicated a frustration in working with you. In April of 1999, we were told by your staff, that they met with you and the union leadership regarding overtime issues. They did so out of frustration, indicating that they perceived an inaccurate account of overtime usage on your part. On 6-24-99 during your evaluation conference you were reminded that leadership means modeling work habits and expectations, so that your staff would work cooperatively with you. At that meeting John and Shellie used the term "get dirty and sweat alittle" as you work side by side with your staff. There has not been positive growth in this area.

Two concerns regarding training of staff have emerged. You were told to be certain that staff was trained regarding the controlled air computer and the opening/closing of gym doors. To date, you have not followed through on this request, a willful disregard of a directive. Again, another indicator that you have not demonstrated leadership as a head custodian.

In summation, we stated that your skills, leadership qualities, management style, and failure to maintain the building at an acceptable level put into question the continuation of your duties as a head custodian. You, along with Kathy, asked for some time to discuss the issues brought forward at the meeting. We complied with your request, and to date have not heard back from

0000066

you. We need to put closure on the concerns we raised, and ask that you get back to us immediately. Please be advised that disciplinary action is under consideration.

_____        _____12-23-99_____
My signature indicates that I have received a copy of          Date
this document.

                                          *Please see Answer Document Attached.*
                                          *By 12-28-99*
                                                    *E.b.*

✓ cc: Personnel File
     Kathy McPharland
     John Cordani

Page 3 of 3

0000067