UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD BOGANSKI | : | |
| VS. | : | NO. 3:01CV2183(AVC) |
| CITY OF MERIDEN BOARD OF | : | |
| EDUCATION, ET AL. | : | JUNE 8, 2005 |

## PLAINTIFF'S LOCAL RULE 56(a)2 STATEMENT OF MATERIAL FACTS IN DISPUTE

**A.    Response to Defendants' Statement**

1.    Agree.

2.    Agree.

3.    Agree.

4.    Agree.

5.    Agree.

6.    Agree.

7.    Agree.

8.    Agree.

9.    Agree.

10.    Agree in part, disagree in part. The procedure was for John

Cordani to send a memo by July each year to the head custodians,

advising who the new vendor was for the up-coming school year. The head custodians were then authorized to call the vendor for fuel.  It was the responsibility of John Cordani to issue the purchase order and process payment for deliveries.  (Ex. 11)

11.    Agree.

12.    Disagree. Cordani told the plaintiff to "make up a purchase order number"  and give it to the vendor. (Ex. 1, plaintiff's deposition, pps. 48-54)

13.    Disagree. Boganski told Villar that Cordani told him to make up a number; Boganski had called the Buildings and Grounds department to obtain a purchase order number and Cordani refused. (Ex. 1, plaintiff's deposition, pps. 42-49)

14.    Disagree. Plaintiff told Villar that he had been ordered to make up a P. O. Number, not a Purchase Order. (Ex. 1, p. 44, top 49)

15.    Agree.

16.    Agree.

17.    Plaintiff has insufficient information to agree or disagree.

18.    Plaintiff has insufficient information to agree or disagree.

2

19.    Objection. This statement is irrelevant since that was not

the statement at issue in this case.

20.     THERE IS NO NUMBER 20 IN DEFENDANT'S RULE

56(a)(1) STATEMENT.

21.    Agree.

22.    Object.  Vague.  It is unclear what request is being referred to.

Did Cordani "request" Figura to issue the purchase order

number? If so, that would have been appropriate.

23.    Plaintiff has insufficient information to agree or disagree.

24.    Agree.

25.    Agree.

26.    Agree.

27.    Agree.

28.    Agree.

29.    Disagree.  Boganski received memoranda from Villar which were

work requests in September, 1999.  (Ex. 8 , Villar memos)

30.    Disagree. This statement is vague. (Ex. 8 , Villar memos)

31.     Disagree.  Boganski saw Cordani visit Villar repeatedly after the

October 1999 heating oil calls; Villar would leave the building with

Cordani with his laptop computer.  (Ex. 1, pps. 79-85) Shortly

thereafter, Boganski received numerous highly critical and micro-

managing memorandums.   (Ex. 9, Villar memorandums)

32.   Agree.

33.   Plaintiff has insufficient information to agree or disagree.

34.   Disagree. This was the stated reason for the suspension; plaintiff

contends that it was a pretext, particularly because Ms. Pierce had

been strongly supportive of the plaintiff prior to December, 1999.

(Ex. 6) (Ex. 2, pps. 115-116)

35.   Agree.

36.   Objection. The decision of an administrative agency is

hearsay and inadmissible.

37.   Objection. The decision of an administrative agency is

hearsay and inadmissible.

38.   Agree.

39.   Agree.

40.   Agree.

41.   Disagree. The plaintiff and Villar had several discussions about

the best method to train the staff, and agreed that it should be

4

done by a technician from the company.(Ex. 10, Bates page 455)

42.   Agree.

43.   Agree.

44.   Agree.

45.   Plaintiff has insufficient information to agree or disagree.

46.   Agree.

47.   Plaintiff has insufficient information to agree or disagree.

48.   Agree that Villar found the list; insufficient information about whether Cordani was with Villar at the time.

49.   Agree.

50.   Plaintiff has insufficient information to agree or disagree.

51.   Plaintiff has insufficient information to agree or disagree

52.   Agree.

53.   Disagree. McParland suggested Hooker School after Cordani indicated that if he remained at Washington Middle School he would "eventually be terminated".  Ex. 2, p. 67, p. 68)

54.   Disagree. Villar commenced employment at Washington Middle School in June, 1999, shortly after receiving his certification as an administrator; he had no prior experience as a public school

5

administrator. In general, he had worked well with the plaintiff until the incident with Cordani in October.(Ex. 1, p. 65-70)

55.     Disagree.  Although Kathy McParland, the union president commented that she thought the custodians were not cooperating with eachother, she attributed it to the fact that the plaintiff had recently assumed his position, that the "incumbents" resented his efforts to demand more of them, and that Mrs. Atkins in particular, spent a lot of time talking in the Principal's office. Mrs. Atkins made a complaint that she was not receiving sufficient overtime work, but when Kathy McParland checked, she discovered that Atkins had received more hours than anyone else.  (Ex. 2, p. 43-44)

56.     Agree in part, disagree in part.  The Superintendent of Schools also participated in drafting the transfer agreement. (Ex. 1, p. 135)

57.     Plaintiff has insufficient information to agree or disagree.

58.     Agree in part, disagree in part. See Def. Statement No. 4, which states that Cordani participated in  the plaintiff's interview for the Washington Middle School position in 1997; Cordani is asked to make recommendations.

59.     Agree.

60.     Agree.

**B.   Plaintiff's Statement of Material Facts in Dispute**

1.      After the plaintiff contacted the Assistant Principal and Assistant

Superintendent and asked whether it was appropriate for John

Cordani to have ordered him to make up a purchase order number

to get a fuel oil delivery,   Cordani encouraged the Assistant

Principal to take adverse employment action against Boganski.

( Ex. 1, pps. 62-3 re: Steve Poppato assisted Cordani, pps. 65-7,

Ex.  2, pps. 72-3, Ex. 14, Principal at Hooker School in March,

2000 reminds Cordani to leave plaintiff alone)

2.      In order to enter a school building or Board of Education building,

an employee needed both the correct key and a code (Sonitrol list).

Ex. 15, McParland affidavit.

3.      The plaintiff had his own code to use for access to Washington

Middle School and the appropriate keys. Ex. 15

4.      The policy concerning the Sonitrol list was unclear, and various

custodians had a copy of the list in 1999. Ex. 15

5.      As of June 3, 2005, plaintiff discovered a copy of a Sonitrol list in

his office at Benjamin Franklin Middle School, which belonged to a

previous custodian, and he turned it over to the Principal Daniel Cioffi, with Christine Bedard and Clifford Martin in attendance. (Ex. 18)

6.  The stated reasons for suspending the plaintiff in December, 1999 were pretextual because he had made an effort to complete staff training on the Control Air system, but the technical personnel were not available to come to the school. (Ex. 19)

7.  The plaintiff applied for a transfer to Hooker School as a custodian in January, 2000, because Cordani would make sure that he was terminated if he did not leave the school. (Ex. 2, McParland deposition, p. 67, 68, Ex. 14)

8.  Shelley Pierce told Kathy McParland that the reason they wanted Ed Boganski to leave Washington Middle School was because he went to the press regarding problems with school operations. (Ex. 2, pps. 115-116)

THE PLAINTIFF

BY:_____
   KATRENA ENGSTROM (ct09444)
   John R. Williams and Associates, LLC
   51 Elm Street
   New Haven, CT 06510
   203/562-9931
   FAX:  203/776-9494
   E-Mail: kengstrom@johnrwilliams.com
   His Attorney

<u>CERTIFICATION OF SERVICE</u>

   This is to certify that a copy of the foregoing was sent via first class mail, postage prepaid, on the date set forth above, to the following counsel of record:

Attorney Alexandria L. Voccio
Howd & Ludorf
65 Wethersfield Avenue
Hartford, CT 06114-1190

Attorney Deborah L. Moore
Corporation Counsel's Office
142 East Main Street, Room 240
Meriden, CT 06450

Gary Phelan, Esq.
Klebanoff & Phelan, P.C.
433 South Main Street, Suite 117
West Hartford, CT 06110

_____
   Katrena Engstrom

9