UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| EDWARD BOGANSKI,  :  Plaintiff,  : | |
| : | |
| v.  : | Civil No. 3:01CV2183 (AVC) |
| : | |
| CITY OF MERIDEN BOARD OF  :  EDUCATION AND JOHN CORDANI,  :  Defendant.  : | |

### RULING ON THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This is an action for damages brought in connection with a failed employment relationship. The complaint alleges violations of the First Amendment to the United States Constitution and seeks damages pursuant to 42 U.S.C. § 1983 and Conn. Gen. Stat. § 31-51q. The plaintiff, Edward Boganski, a former school custodian, alleges that the defendant, City of Meriden Board of Education, discharged him in retaliation for his refusal to follow a directive to create a fictitious purchase order for heating oil.

The City of Meriden Board of Education, and the individually named defendant, John Cordani, now move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure and local rule 56(a)(1), arguing that there are no genuine issues of material fact, and they are entitled to judgment as a matter of law. The issue presented is whether the plaintiff has raised a genuine issue of material fact that the defendants violated his First Amendment rights. For the reasons hereinafter that follow, the court concludes that the defendants are entitled to judgment

as a matter of law since there is no issue of material fact concerning whether the plaintiff's speech touched upon an issue of public concern.  Accordingly, the motion is granted.

## FACTS

Examination of the complaint, affidavits, pleadings, Rule 9(c) statements, exhibits and supplemental materials accompanying the motion for summary judgment, and the responses thereto, discloses the following undisputed, material facts.

On August 30, 1992, the municipal defendant herein, the City of Meriden Board of Education, hired the plaintiff, Edward Boganski as a night custodian at Pulaski School.  He subsequently became the van driver/messenger at the defendant's offices.

In October 1997, Boganski received a promotion to the position of head custodian at Washington Middle School.  In this capacity, Boganski conducted some cleaning tasks, supervision of other custodians, ordering of supplies, and payroll.

In October 1997, one Shellie Pierce was the school principal and the defendant, John Cordani, was the manager of buildings and grounds.  Pierce served as Boganski's immediate supervisor until July 1999, when one, Jeffrey Villar, the new assistant principal, became Boganski's immediate supervisor.

In October 1999, Boganski needed to order more fuel oil to heat the school.  At that time, Meriden Public Schools began using a new vendor for supplying fuel, which required a purchase

order number for shipments to be made. Boganski called Cordani for a purchase order number to obtain the fuel oil. Cordani did not give Boganski a number and told him to create a fictitious one. Boganski did not feel comfortable making one up and did not order the fuel.

Boganski called Cordani again the next day regarding the schools need for oil and the new policy requiring a purchase order number. Cordani again told Boganski to make up a number to give the vendor, and that he would take care of it when he came down to the office. Boganski again did not make up a purchase order number and did not order the fuel.

On October 12, 1999, Boganski went to see Villar and explained to him that he needed to order oil for the school and Cordani had told him to give the vendor a fictitious purchase order number. Boganski explained that he did not feel comfortable following Cordani's directive. Villar told Boganski to work directly with Cordani to resolve the issue and that Cordani needed to give him a number.

Cordani and Boganski later had another phone conversation whereby Boganski told Cordani that he had spoken with Villar about the situation and that he did not feel comfortable making up a purchase order number. Cordani did not give Boganski a purchase order number and hung up the phone without saying goodbye.

3

Boganski then called one Glen Lamontagne, the assistant superintendent, who was Cordani's supervisor. Boganski explained that Cordani had yelled at him when he refused to make up a purchase number and that he believed Cordani's directive to be improper. Lamontagne told Boganski to calm down and that he would take care of the issue.

Lamontagne then called Cordani and instructed him to make sure the fuel oil was delivered. Ultimately one Catherine Figura, Cordani's assistant, called the vendor with a proper purchase order number. The oil arrived the next day.

Boganski's deposition transcript offers evidence indicating that he did not contact Villar or Lamontagne in an effort to get Cordani fired or reprimanded. Boganski testified that he contacted Villar to get advice on how to obtain the fuel since he did not feel comfortable making up a purchase order number. Boganski also testified that he did not consider bringing this to the attention of the press, and he had not formulated an opinion as to whether or not John Cordani attempted to obtain fuel oil without the Board of Education paying for it.

On December 23, 1999, Washington Middle School suspended Boganski for three days without pay. Shellie Pierce, in consultation with Villar and Lamontagne, issued the suspension because Boganski had: (1) failed to obtain training for the custodians under him on the controlled air computer system

4

despite directives to do so from Lamontagne, Cordani, and Villar; and (2) lied about possessing a Sonitrol list which contained employees security codes for access to the school building.

On January 5, 2000, Boganski grieved the suspension through arbitration.  The arbitrator ruled in favor of the Board of Education and upheld the suspension.

In February 2000, Boganski signed a transfer agreement to become a night custodian position at Thomas Hooker School.  It was evident at this time that Boganski had problems supervising the school's custodians and the administration was dissatisfied with his work.  The union president, one Kathleen McParland, raised the issue of the transfer and the union drafted a letter of agreement regarding the transfer.  Boganski considered the transfer a demotion since he would be working an evening shift and getting paid less.  Boganski allegedly signed the agreement because Cordani said that if he did not accept the transfer, he would be fired.  Cordani denies having said this.

## **STANDARD**

Summary judgment is appropriately granted when the evidentiary record shows that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c).  In determining whether the record presents genuine issues for trial, the court must view all inferences and ambiguities in a light most

favorable to the non-moving party.  See Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.) cert. denied, 112 S.Ct. 152 (1991).  A plaintiff raises a genuine issue of material fact if "the jury could reasonably find for the plaintiff."  Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 252 (1986).  Rule 56 "provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  Liberty Lobby, supra, at 247-48, (emphasis original).  The Supreme Court has noted that:

> Rule 56 must be construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.

Celotex v. Catrett, 477 U.S. 317, 327 (1986).  "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims. . . [and] it shuold be interpreted in a way that allows it to accomplish this purpose."  Celotex v. Catrett, 477 U.S. 317, 323-324 (1986).

## DISCUSSION

### Protected Speech Under the First Amendment and the Equivalent Provision of the Connecticut State Statute

All of the defendants have moved for summary judgment with respect to Boganski's claim that they retaliated against him for having exercised his rights as protected by the First Amendment

6

to the U.S. Constitution or the equivalent provision of the Connecticut state constitution.  Specifically, the defendants assert that Boganski's speech was not protected since it did not touch upon an issue of public concern and thus, they are entitled to summary judgment.

Boganski responds that his speech and actions involved matters of public concern that are protected by the First Amendment.  Specifically, Boganski asserts that he was bringing a matter to the attention of his employer which raised a questionable business practice that could affect employees and management, and as such was raising an issue of public concern. Boganski claims that expressing his concern about a directive to make up a purchase order number was a substantive factor that led to adverse terms and conditions of his employment.

The United States Court of Appeals for the Second Circuit has held that a plaintiff claiming First Amendment retaliation must demonstrate that: "1) his speech addressed a matter of public concern; 2) he suffered an adverse employment action; and 3) a causal connection existed between the speech and that adverse employment action, so that it can be said that his speech was a motivating factor in the determination." Mandell v. County of Suffolk, 316 F.3d 386, 382 (2d Cir. 2003).  Thus, unless Boganski can show that his speech addressed a matter of public concern, it is unnecessary to scrutinize the reasons for his

discharge.

In Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983), the United States Supreme Court established the test to determine whether an employee's speech addresses a matter of public concern. Speech addresses a matter of public concern if it can "be fairly considered as relating to any matter of political, social, or other concern to the community. . ." Id. at 146. That determination is made in light of "the content, form, and context of a given statement, as revealed by the whole record." Id. at 147-48. "The inquiry into the protected status of speech is one of law, not fact." Connick, at 148 n.7. "The First Amendment does not immunize from dismissal a public employee who speaks 'not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest.'" Luck v. Mazzone, 52 F.3d 475 (2d Cir. 1995) (quoting Connick, 461 U.S. at 174).

To determine whether an employee's speech touches upon an issue of public concern, the Second Circuit adheres to an analysis which examines the employee's motives, "to determine whether the speech was calculated to redress personal grievances or whether it had a broader public purpose." Lewis v. Cowen, 165 F.3d 154, 163-64 (2d Cir. 1999); see Harman v. New York, 140 F.3d 111, 119 (2d Cir. 1998)(examining whether speaker was motivated by "a desire to continue contributing to the public debate" when

criticizing practices and policies of social services agency); Blum v. Schlegal, 18 F.3d 1005, 1012 (2d Cir. 1994)("the fact that an employees speech [critical of national drug policy] touches on matters of public concern will not render that speech protected where the employee's motive for the speech is private and personal"); Ezekwo v. New York City Health & Hospitals Corp., 940 F.2d 775, 781 (2d Cir.), cert. denied, 502 U.S. 1013, 112 S.Ct 657, 116 L.Ed.2d 749 (1991)(examining whether speaker was "on a mission to protect the public" despite inherent public interest in criticism aimed at quality of physician training program).

Pursuant to this analysis, "Connick requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest?" Linhart v. Glatfelter, 771 F.2d 1004, 1100 (7th Cir. 1985).

Because the inquiry into the protected status of speech is a question of law, Connick, 461 U.S. at 148 n.7, the court may at summary judgment resolve a factual dispute between the parties regarding the context in which Boganski's statements were made. Specifically, whether Boganski expressed his concerns regarding the directive to make up a purchase number as a concerned citizen or as an employee articulating a personal grievance.  It is well

9

settled that internal employment policies are not a matter of public concern. See Connick, 461 U.S. at 149 ("the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal affairs.)

The evidentiary record, though supporting a finding that Boganski sought to correct a questionable business practice, furnishes no support for a finding that Boganski was motived in his speech to raise an issue of public concern. In this regard, Boganski's deposition testimony indicates that he spoke with Villar and Lamontagne about Cordani's order to obtain advice on how to properly provide the fuel oil for the school. There is no evidence he intended to address an issue beyond the specific order he was questioning. The fact that the business practices of a board of education may generally be an issue of public concern does not compel the conclusion that any speech regarding the board is protected. See, e.g. Terrell v. University of Texas System Police, 792 F.2d 1360, 1362 (5th Cir. 1986), cert. denied, 479 U.S. 1064, 107 S.Ct. 948, 93 L.Ed.2d 997 (1987).

The court therefore concludes that as a matter of law, Boganski's speech does not address an issue of public concern regarding the business practice of the Meriden Board of Education. Thus, "a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior."

Connick, 461 U.S. at 147. Because Boganski's speech is not protected by the First Amendment his claim of retaliatory discharge fails.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment (document no. 48) is granted.

It is so ordered, this _____ day of August, 2005, at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge